Mr. Modi, please proceed. Thank you, Your Honor, and may it please the Court. First, I'd like to acknowledge that Mr. Conley Monk has traveled to be with us in court today. Thank you. Welcome to the courthouse. We are here on behalf of the 470,000 disabled veterans who will wait, on average, six years for a decision from the Board of Veterans' Appeals. What was that number again? Roughly 470,000, Your Honor, and six years for a decision. That's your problem, isn't it? Where is the commonality among 470,000 people? Your Honor, the commonality is that all of these veterans are mired in a system of systemic delay. The Walmart case requires class members to ask a common question that admits a common answer that will resolve this litigation. But is the delay, the specific cause of the delay, common to all of them? Your Honor, it is plaintiff's legal theory that the cause of the delay does not matter. At a certain point, delay becomes per se unreasonable under— But the remedy has to relate to the cause, doesn't it? No, Your Honor. There are cases that have held, for instance, in the due process context that at six months, the detention of a non-citizen becomes a per se violation of the due process clause, regardless of the reasons that the government or justification that the government may offer for that delay. And similarly in track, the reasons for the government's delay are not a part of the track analysis. The first factor of the track analysis, which is the most important, states that there must be a rule of reason that governs the agency delay, but that looks to the length of the delay and the length is reasonable given, for instance, the complexity of the agency action, not any particular cause that might lead to the action. And it is plaintiff's legal theory that at a certain point, the delay becomes unreasonable. And that's the common question that this court will decide. When you look at the reason of delay, are you required to look at every specific veteran, or is it enough to look at the process as a whole? You used the word systemic. Does that equate to inherent? Your Honor, I think when we say systemic, what I mean is that this is harmful government conduct that affects every single veteran in the class. Every single veteran, when they file an appeal, or when they file their notice of disagreement, is essentially told to get in line and wait. And this is something that the VA's OIG report has stated, that veterans have to learn to live with the waiting. There's no way to escape that delay. And that's what we mean by systemic. To your question about whether the harm is individualized, at this point, to find commonality, you only need to find that the delay becomes, per se, unreasonable at a certain point, regardless of any individualized differences that may exist. A veteran, regardless of the veteran's individual circumstances, it is our position that at a certain point, the delay becomes unreasonable. And if I could- How do we establish that? Or who establishes that? Congress or the courts? And then at what point? Is it two years, five years, 10 years? Your Honor, the point at which the delay becomes unreasonable is we submit the merits question, not the question of whether there's commonality. And if I could reference something that the government has represented, the Secretary has represented below, and we cite to this at page two of our reply brief, the Secretary has stated that under certain circumstances, even a 100-year delay could be reasonable. And that simply cannot be the case. It cannot be the case in a system where these are disabled veterans, where one in 14 veterans die waiting for a decision on their appeal. That was true in the year 2016, when one in 14 of the cases resolved by the Board of Veterans Appeals was a result of a veteran passing away. And so in a system like that, it can't be the case that there is no point at which delay becomes unreasonable, or that- It seems to me that the Veterans Court is not saying that we can't aggregate cases, and that it's never possible to have a case proceed to a merits-type finding. It's just saying that in this case, we don't get to that. How do you answer to that? That's correct, Your Honor. Our argument is that the plaintiff, excuse me, the CAVC imposed a heightened commonality standard that contravened the Walmart standard below. They required plaintiffs in this case to identify, for instance, specific practices and policies to identify the causes for the delay. And nowhere is that required by Rule 23 to find commonality. And so that's the error of the law. But how do you find a remedy? If one cause is there aren't enough physicians around, the remedy is to hire more physicians. If another is because files aren't moved from one place to another effectively, that can be the remedy. But in the absence of some specificity, where's the remedy? Your Honor, the remedy that the class members seek is that the VA adjudicate all appeals within a certain period of time. And that's a single injunction that would apply to every single class member. And that's relief that every class member would benefit from. Isn't that for Congress? No, Your Honor. This court has an independent responsibility to state when there is a violation of law, whether it's a statutory violation or a constitutional violation, and remedy that harm. And the fact that legislative action may occur in the future is not a reason to not act. And if I could reference VEMA, which is Congress's ostensible solution to the systemic delay issue, that does nothing for the veterans who are waiting in the legacy system. Veterans in the legacy system will still have to wait in the current system, which means that they are still going to be subject to multi-year delays. And the VA cannot offer a timetable for when it will resolve the legacy appeals at all. And so there's no legislative solution. What happens to the veteran who, through his or her own volition, decides, for example, in the process to pursue a different claim or different argument or to get another medical opinion, and that's the cause of the delay or a cause, right? That would be a cause of delay. Your Honor, our argument is that, first, the overwhelming majority of delay at every single stage is due to VA inaction. And that's something that this court, Judge Moore of this court, recognized in her concurrence in Martin, that many of the delays at various stages of the process are simply inexplicable. It takes 500 days to issue the SOC. But in that case, it was something specific and tangible. You're dealing with a particular certification form. And I believe that it only took minutes to fill out. You're correct, Your Honor. But show me what we have here in this case that's similar to that. So this is, of course, an amalgamation of the various stages of delay. And so it includes both the issuance of the SOC, the certification stage transfer, et cetera. But the point is that, from the veteran's perspective, veterans are made to wait almost six years for a decision. And that's the legal harm that veterans are experiencing. If you had a claim that these 4,000 veterans had SOCs delayed an unreasonable amount of time, then maybe you would have specificity and commonality sufficient to generate a remedy. Your Honor, I think the Walmart standard is simply that there's a single common contention that admits a common answer. And so, of course, there would also be commonality for cases that challenges a specific stage of the delay. But our argument is that the property entitlement at issue for the due process violation, for instance, is a decision on the appeal. That is the legal harm. And so regardless of whether there's commonality for a specific stage of the process, there is certainly commonality for veterans who seek to actually have a decision, a decision from the board on their appeal. And that's the actual legal harm that veterans are experiencing, the veterans in this class. Wouldn't a systemic or an inherent delay satisfy the commonality test? Your Honor, could you repeat the question? Wouldn't a systemic or an inherent delay in the entire process satisfy the commonality test here? Yes. And I think that's our argument. Our argument is that here, just as cases have found challenging, for instance, government conduct in the prison conditions cases, Parsons versus Ryan is an example here. So is that enough? We don't have to find a common remedy? Well, Your Honor, I think plaintiffs do offer a common remedy. And one of the things that the Walmart court said was that the key to the 23b2 class is that there is a single injunction that remedies the harm. And the injunction that the class members seek is that the VA adjudicate these appeals within a certain period of time. That period of time is a question for the merits. And that's a question that is later on in the litigation versus this earlier stage where we're just talking about commonality. So could we decide that question in this case? Could this court decide that question? I think this court could, but I think that goes to the merits, which is not briefed before this court right now, which is at what point delay becomes personally unreasonable. It is our argument that that occurs at one year, although- I think you're beginning to undo your argument. I mean, once you start briefing as to why for Betty, here's the delay, and for Sam, here's the delay, you may be talking yourself out of the application of 23 here. Your Honor, I see my time is up. So if I may just respond briefly. I think the argument is that at a certain point, delay becomes unreasonable as a matter of law for all plaintiffs. And that is the common question and the common answer that this court needs to find commonality. The question of the remedy is a question that the court would reach, that the CAVC would reach in the first instance after the merits. Are you suggesting we're the ones that answer that question, or is it the VA? That's a question for the CAVC to decide in the first instance, Your Honor. Thank you. Thank you. Mr. Hockney. May it please the court. It can't be that the government is condoning at least some of the instances for some of the petitioners here. Is there any consideration being given to remedying the situation that has been presented to us? Not to this court, because Congress is actively engaged in this. The Appeals Modernization Act that got passed two years ago was designed to address this very issue. To provide lanes so that folks entering the system could decide whether they wanted a quick review, which would not involve any further development or entertaining any further evidence that that individual might provide. As opposed to the regular, a more regular channel, which would provide folks who wanted to provide additional evidence or wanted another medical examination, things that normally take a lot of time. And as this court said in Martin, were the kinds of things which needed to be taken into account during the first factor analysis. And would explain why it would be perfectly reasonable in some of those cases for a delay following the notice of disagreement to exceed a year. Congress is very much involved. The Secretary is very much involved. We just issued rules implementing the new Appeal Modernization Act, which have been challenged, and this court will hear those. So frankly, in the words of the Supreme Court and Heckler, when they were dealing with similar delays in the Social Security process, what this court needs to keep in mind when determining whether some sort of class action relief is appropriate is, this isn't something out there that people have been ignoring. And suddenly we have a class that says, look, we got a problem, and we need to bring attention to it. This is a problem that this court knows that the VA has been struggling with, dealing with, we say outright in our briefs, for a long time. And we're taking every step we can to make sure that this process as a whole, with all of the sub-processes that take place, are all addressed in a manner that can speed it up so that people don't have to wait very long. I'm sorry, go ahead, Judge. But what the VA and Congress may be doing doesn't provide the answer to whether they have a proper class action. Yes. So as the questioning this morning was addressing, I mean, Walmart does affect change. It used to be you could come and have a common question. Now you need to have a common answer. You need to have a one-stroke solution. But not a common remedy. The remedy here cannot be, well, you were, you have a delay. Walmart does not require a common remedy. Walmart requires a common one-stroke solution. And if you want to call that a remedy, it could be a remedy. No, but when you talk about remedy, and the government talks about remedy, they're talking about the remedy that's specifically tailored to an individual, not the one. So if we were to find a single brush stroke to provide a remedy, then that would fit this case as well. If you had a single brush stroke, then you might be able to say, despite the fact that as it may apply to individuals, you know, you'd have to have that process. That could satisfy the Walmart. God see, the case we cited in our Rule 28 is such a case. So this case could satisfy Walmart, but for, we're missing the broad stroke. The commonality. Let me put it to you this way. Well, but let's make sure we're talking about the same thing. We're not talking about commonality, meaning that every veteran is required to have a specific remedy tailored to their particular issue. That's not the broad brush stroke. No, not if I'm understanding you correctly. The complaint at paragraphs 52 and 53, appendix 465 and 480, 465 is the beginning of the complaint, but it's at appendix 480. This is the complaint. They are, they suggest there that the delay in excess of a year is unreasonable. That would appear to be the remedy. What they would like the Veterans Court to do is entertain a class, and at the end of the day, it would say any delay in excess of a year is a violation of due process. Now, Judge Allen, in his dissent, changes that, and it appears that petitioners sort of adopted that, although that's not what their complaint says, to more of a, well, is there some period of delay? Well, maybe it's as simple as the problem is that the way they define the class, it applies to everybody. Whatever happens during the year, even if, for example, during that year, there is a good deal of medical work and so on, with perhaps a less comprehensive complaint or one stroke, there is indeed a readily definable class, let's just say one year after all the evidence is in, rather than one year from when the initial request is made. It's a totally different situation, a different class, significantly more limited, but also one where the delay would be more conspicuously egregious. Isn't there, or is there? To make this all or nothing, perhaps that's the way one goes about trying to bring these activities to judicial attention. But meanwhile, this has been in Congress for quite a while, has it not? And we haven't seen a resolution. I mean, to be fair to Congress, that's a pretty comprehensive statute that they just issued in 2017, trying to address the issue. But to answer your question, Judge Newman, yes, a more focused class would survive. First of all, as this Court has already held in Monk 1, or Monk 2, I don't remember, but it's this Court's first Monk decision, the Veterans Court has to consider class relief in their cases when it's asked. So that hurdle we've already passed. Now the question is, can we identify a class with sufficient commonality? And in the case that we cited in our Rule 28, the Veterans Court certified that class. That deals with just the certification question, which is a more, if you will, ministerial act, as this Court suggested could be the situation in Martin, as opposed to, as you described, Judge Newman, the situation which I would suspect, and I don't have any empirical evidence, but having practiced before this Court on these kinds of issues for a long time, I would not be surprised if over 50% of the 470,000 potential claimants in this case would prefer that they do not have a situation in which the Court issues an order saying, you need to issue a decision within one year, irrespective of the evidence that you want to have. That would be the decision, then. That would be the decision, correct? If they want to go pursue a medical opinion or somehow take some action that delays the process, that's their decision. You still have 225,000 veterans who are delayed by a systematic process. When you are at this stage of the game, Your Honor, analyzing the question of commonality of a class of 470,000, and the answer is, well, 50% or 60% of them could opt out, I mean, when those 50% or 60% are opting out because they don't want a specific remedy. Maybe you're looking at the reason, but if, and I think we've already gotten to the point to where we can say, and I think it was with you or counsel, that a systemic delay or an inherent delay provides commonality. No, I disagree. We disagree. That's just a label that you're putting on something. You disagree because it doesn't give the remedy. If all that is wanted here is a pronouncement by a judicial body that the VA is encountering delays, then what have we accomplished? Why did we go to the courts in the first place? We go to the courts for remedies to solutions that we have. The remedy in this case can't be what Judge Allen suggested in his dissent. At the end of the day- But it can be a single broad-brush stroke. It can be like the Godsey case, which the Veterans Court just handled. It could be that, but it can also be a single broad-brush stroke. You have to have some sort of, what are we gaining from the process? This is what the Supreme Court said exactly in Heckler. The fact that Congress is actively engaged and the Secretary is actively engaged in trying to address systemic delays, which isn't a single process. It's all kinds of things. It's 25 years of Congress, the Veterans Administration, and this court providing process to veterans. This court providing the process. Now we have all kinds of process for these veterans, and we have a system that is clogged. We need to address that, and we know that. Congress knows that we're working together, but we want to do it in a way that doesn't deprive people of process. When I suggest to Your Honor that the majority of 470,000 people who may, like Judge Newman's example, be responding to the NOD with new evidence. They read the 5104 decision that they get, and they say, wait a minute. Why didn't I get my benefits? I know I have that evidence. I didn't understand that they were asking. So they respond, and they give him that evidence. Then you're right into the track one rule of reason question, because the development that takes place at that point isn't ministerial. They have to do it in every case, and that's one of the actual problems with this particular class, where you start the process at the NOD filing. I'm diverging from my answer a little bit. I'm demonstrating to the court how complicated this is. You end it at the board decision. The first thing that happens when you file an NOD under 38 CFR 1926 is that the RO re-engages the record. They take whatever is in that notice of disagreement, whatever statement, whatever evidence might accompany it, and they redo it. There's also the possibility, provided by regulation, for a decision review officer review. That would be like Judge Newman was the RO, and she issued the decision. And when the NOD comes in, they say, could I get a DRO? I want Judge Reyna to look at it. You haven't had any time in this case. You're brand new to the case. Time gets added to the process. These are all track one factors that this court has already held in Martin, could merit delay well beyond a year in the process related to developing claims. All of these people are included in this class. I appreciate your thoroughness in your answers. We're well aware of the VA process, and we're especially well aware of the delays. We have addressed the delay issue before, and Congress is aware of that. So Congress has been aware, and Congress has not come up with the solution. Congress has not imposed a statutory requirement to issue a board decision within one year. So now we know that the VA, the Veterans Court, has authority to aggregate cases. That brings us to this particular case. Which this court reviews for an abuse of discretion. And the lower court, the court that would actually have to entertain this case and come up with a one-stroke solution, found that they could not, given the complexity of the issue. You disagree with your friend on the other side that we could not come up with the... I think you're in appellate court reviewing a class decision. So no, I would say that... So if we disagree, we would have to vacate and remand. You would send it back for consideration, given whatever direction you provide. Which I suppose would be that you found that they abused their discretion in finding that the class was too unwieldy to result in one-stroke relief, as per the Walmart decision. We would submit that would be error. Because we think it's a straightforward application of Walmart in this case. In fact, Walmart has the same kind of thing. You could have labeled, as the petitioners did, employment, hiring, and discrimination practices. But what undergirded that claim was a whole slew of various practices and policies by Walmart. Let me ask you this other question. In view of the recent cases, does this appeal move in view of the series? So what I think how this would work out is because the issue of whether these folks who, as you correctly point out, most of them, if not all, I think Mr. Dodson, he did not get his NOD or whatever. But they went on to rule that the delay was not unreasonable. I think the nine named plaintiffs. They all received their board decisions. So the question then, I suppose, would be whether they can still be retained as class, for their role as class representatives. No, what I'm asking you is, does that move this action? I don't think so. I think that it's a class. And then they could change representatives. I mean, if I'm wrong about that, I'll file a brief. But the bottom line, from our perspective, is that because this court is reviewing the decision below for an abuse of discretion, the question really for this court is, was it reasonable for that court to say that there were too many balls in the air for this to satisfy the commonality standard? So you're sitting in review of that court, which has already held that there were too many balls in the air. I think what we've done here this morning is to further demonstrate that there are a lot of balls in the air. And many of those balls are of the kind that, in Martin, would, on their face, not result in a finding of unreasonableness within a year. The 1926 thing, at a minimum. Well, I think the problem here, there's a lot of balls in the air, except they're just not being twirled. Well, so at the end of the day, you have to determine whether this is the best mechanism, and what are you going to get at the end of the day? What is the one-stroke solution? And if your one-stroke solution is simply a pronouncement by the Veterans Court along the lines of Judge Allen's dissent, which said, there's delays, VA, go do something about it, then I don't think that that's anything that any of these class members really want. I think what they want, as they've demonstrated, and they've demonstrated an ability to do it in the Godsey case, is to focus on particularized practices that might be susceptible to some sort of relief. For example, a perfect example of a class action would be the Blue Water folks. And they're arguing about, there's lots of them, and they're arguing about, where does the line get drawn? That's the kind of thing that would be appropriate for class action. But when you're talking about trying to satisfy all the track factors, and you're talking about a class in which everyone is allowed to supplement the record and to react in their NOD to why they think they were denied the claim, and that very reaction precipitates further development by various bodies, that's not the kind of thing that can satisfy what this complaint seeks, which is a one-year finding for unreasonable delay. So just for clarification, I think you said that when we reviewed, if we were to review the Veterans Court decision, we would do so, or part of it, under an abuse of discretion standard. That's how I understand these have been done. Is it a legal question? Excuse me? Is it a legal question we'd be addressing? So that's a very good question, Your Honor. Because as this Court's discussed in dealing with the All Writs Act in Lamb and Beasley, and trying to balance it with 7292D's prohibition against application of law to effect, it's a sort of windy highway that this Court needs to follow. Because this Court has found in Lamb and Beasley that it can address those basic factors that are articulated by a standard, like commonality or whatnot. But when, in trying to address those factors, the Court has to delve in to particular questions that are best left to the VA process, would be the normal things you would encounter in a sort of VA review. The application of VA law to the facts of the case, that's where the line stops, and the Court needs to accept what has already been set forth, because it can't overturn or re-review those kinds of applications of law to effect. So it's a complicated maneuver. But the Court has provided guidelines in Lamb and Beasley on how to do it. Okay. Thank you, Mr. Hockey. Mr. ... Ms. Noiter? Good morning. May it please the Court. Judge Rayna, let me answer some of your questions directly. The standard is review of a legal error under 7292. The nine petitioners are not all moot. Mr. Dolphin has been waiting five years, one month, and two days for a decision on his NOD. Even if that particular claim was mooted, you would agree that this appeal's not moot? Absolutely. Okay. Capable of repetition, yet evading review. Exactly how you found in the original Monk decision in 2017. The core question that we are here on is, did the Veterans Court make a legal error in construing the commonality requirement under Rule 23? That's it. That's the question. We say they erred. Why? Because, Judge Lori, they said the petitioners have to identify a specific practice or procedure. We think Judge Allen was correct. Judge Sholin and the three judges who agreed with her misconstrued our petition. Our petition said there's systemic delay. There is inherent systemic delay on a categorical basis for the entire group of 470,000 appellants. That is unreasonable. And how do you propose to remedy that through a class action? You have an automatic, after one year, it's over. And aren't you just as likely to find that if a case has not yet been developed during that year, you just get a rejection and you're worse off? You presented some examples of delay which cannot be justified. But we also know that there are many thousands of cases that are going through the system, more or less reasonably, but they take more than a year. And it looked to me as if had a class been defined that was less ambitious and less prone to just being unworkable, that perhaps there is room for some sort of legal judicial pressure to try and move, at least to move along the congressional actions. But what's been requested here goes, I think, from the way the Veterans Court defined it, quite specifically, they felt it was unworkable. Your Honor, you are voicing misgivings about the merits of our claim. You and perhaps others do not like the one year, eat it. We understand that. We asked for that as advocates. But we also said to the Veterans Court, if you do not like that one year, you think that's too draconian. It is in your discretion to either redefine the class or construe a writ remedy. Is it up to you as the petitioner? Yes, Your Honor. To make these definitions? It is. Asking the court to do your work? No, and we take full responsibility. It's our job to propose a class that has commonality together. And we believe we've done that because we have construed this as a period of delay that is unreasonable per se. If one year is too short, surely four years is too long. And the writ is to tell the secretary- That isn't what you're asking for. You haven't built into your request any degree of discretion. Your Honor, respectfully, I disagree. If you go back to our corrected amended petition, I don't want us to blur the class definition and our request on the merits. Our class definition said each member must have waited more than 12 months from the NOD to the board decision. If you look at the merits of our constitutional due process claim and our unreasonable delay, we actually say 4.9 years is excessive and unreasonably too long under the Constitution and under the statute. I agree with that, but that isn't what you've asked for. Your Honor, we asked in our prayer for relief for a remedy to tell the secretary to issue decisions within one year from the NOD. You are 100% right on that. That was the scope of our writ request. However, we are here right now on commonality. Did we raise a question that can be answered yes or no in one stroke? You all may say, you've raised a common question. Is one year unconstitutionally and statutorily too long? And the answer, counselors, is no, it's not. You don't like our question. We fail in unison.  Is there a question that you rise, you prevail? Or fail in unison? I would respectfully submit that we hit our hurdle at this point. We have satisfied the commonality requirement by posing that categorical question. Again, you might not like our merits categorical question, but it can be answered in that single brushstroke you've been referring to. If you articulate that for the Veterans Court and remand, then the Veterans Court can take it up and say, we struggled a little bit with that Walmart case. We thought that there had to be a particular practice or procedure within the overall appellate process. The Federal Circuit has told us that that was over-reading Walmart for the veterans context. We now have their guidance. There has to be a single question, good or bad, that provides a uniform answer. And in that remand, it will be our job, to put it to the CAVC to certify our class. They may, in the stroke of mercy, give us the opportunity to reformulate. The question is, how many bites of the apple do you get? You come up and you didn't do it right, and you want us to send it back and say, try it again. Your Honor, I totally appreciate it's the year 2019, and this is the second time we're here on behalf of Mr. Monk. So this, you could say, is our second bite at the apple. But respectfully, we are in new uncharted waters, and we are doing this together with the CAVC and together with the Veterans Court. Here, the CAVC, for the first time ever, announced the standard that it would utilize. It said, we will employ Rule 23. But then, unfortunately, from our perspective, they went adrift. They said, we're also going to borrow the Walmart standard for veterans cases asserting systemic delay. And that's where we differ, because they had Title VII with an animus scienter requirement. We do not, under either the due process or under the track factor, have to show an intentional, culpable mental mens rea on behalf of the VA. So we're different. It's for us to decide whether they should rewrite your complaint in order to meet the various requirements that they explored in significant depth. Your Honor, I would not say rewrite our complaint. Our complaint, as I articulated in the merit section, talks about the overall period of, at that point, 4.9 years of delay. Your complaint talks about one year. And then we say, the remedy should be one year. I'm not saying that you should give us 17 bites at the apple. What I am saying is that the single issue we are here on now is, did the Veterans Court accurately, legally construe the commonality requirement? And unfortunately, they did not. That's the legal error that needs to be corrected, because otherwise, every other forthcoming petition is going to be decided under that plurality requirement of identify a particular policy. Now, interestingly, you saw the Godseed decision be brought to your attention from the Secretary. The Godseed decision to prove that the plurality in month was wrong did not require a specific practice or policy. It was just the experience of waiting 733 days for certification that was deemed, per se, unreasonable. So they chose a subsegment. And you have each focused on different subsegments of the appellate process. What we have said is, if you bring your lens up higher, you can look at the entire five to six year process and say, that five to six year process is unreasonable, per se. OK, I think we have the argument. We were out of time. Anything else you want to ask Ms. Knight? No, that's fine. Very well. Thank you, Your Honor. Ms. Knight, thank you all. The case is taken under submission.